**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 19-cr-083-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

**2. HANLI YANG**,

 Defendant.

## ORDER ON PRETRIAL MOTIONS

 The Government charges Hanli Yang ("Yang") and her co-defendant, Fudong Wu ("Wu"), with three crimes: (1) conspiracy "to manufacture and possess with the intent to distribute 1,000 and more marijuana plants, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vii)"; (2) "manufactur[ing] and possess[ing] with intent to distribute 1,000 and more marijuana plants, a Schedule I controlled substance," potentially to include aiding and abetting that crime, "[a]ll in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vii) and Title 18, United States Code, Section 2"; and (3) "us[ing] and maintain[ing] a [a home in] Aurora, Colorado, for the purpose of manufacturing and distributing marijuana, a Schedule I controlled substance," potentially to include aiding and abetting that crime, "[a]ll in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2."  (ECF No. 1 at 1–2.)

 Before the Court are eight motions filed by Yang:

- Motion to Suppress Fruits of Search Warrant (ECF No. 50);

- Motion for Relief from Prejudicial Joinder (ECF No. 51);

- Motion for Disclosure Pursuant to Rules 404(b) and 609, Federal Rules of Evidence (ECF No. 52);

- Motion for Early Production of *Jencks* Material (ECF No. 53);

- Motion for Production of *Bruton* and Rule 801(d)(2)(E) Materials and Motion for Pretrial *James* Determination of Admissibility of Alleged Co-Conspirator Statements (ECF No. 54);

- Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment (ECF No. 55);

- Motion to Disclose Identity of Informants (ECF No. 56); and

- Request for Notice by Government of Intent to Introduce Evidence Pursuant to Rule 807, F.R.E. (ECF No. 57).

For the reasons explained below, these motions are variously denied on their merits, denied as moot, or denied without prejudice as premature.

## I. SUPPRESSION MOTION (ECF No. 50)

On October 10, 2018, law enforcement officers executed a search warrant on a residence owned by Yang and her co-defendant, Wu, in Aurora, Colorado. (ECF No. 69 at 2.) The officers found about 1,121 live marijuana plants growing in the basement, forming the basis of the indictment. Yang challenges whether probable cause supported the warrant that authorized law enforcement officers to search her home.[1]

---

[1] The Government responded to this motion (ECF No. 69 at 3–9) and the Court granted Yang leave to file a reply (ECF No. 72). As Yang acknowledges, that reply was filed one day late. (ECF No. 73 ¶ 3.) Under the circumstances, the Court accepts the reply and has

### A. General Standards

#### 1. Burden of Proof

"Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of [proving that the Government violated the Fourth Amendment]." *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) (internal quotation marks omitted). Yang has offered no argument why the general rule does not apply in this case, nor is the Court aware of any possible argument. Accordingly, Yang bears the burden here.

#### 2. Deferential Review of Warrants

The Court's duty

> is to ensure that the magistrate judge had a substantial basis for concluding that the affidavit in support of the warrant established probable cause. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place.
>
> Because of the strong preference for searches conducted pursuant to a warrant, the Supreme Court has instructed us to pay great deference to a magistrate judge's determination of probable cause. Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. The test is whether the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched.

*United States v. Nolan*, 199 F.3d 1180, 1182–83 (10th Cir. 1999) (internal quotation marks and citations omitted; alterations incorporated).

---

considered it in the analysis below.

**B.     Padilla's Warrant Affidavit**

The warrant affidavit in question was filed on October 9, 2018 by Ray Padilla, a Westminster police officer assigned to the North Metro Task Force, a multi-jurisdictional drug task force in the northern Denver metropolitan area. (¶¶ 2, 69.)[2]

Padilla explained that, several years ago, the North Metro Task Force began investigating a marijuana-growing network operated by persons of Chinese descent. (¶ 11.)  This investigation has so far resulted in 145 search warrants yielding 29,000 marijuana plants and 2,500 pounds of finished marijuana. (¶ 17.)  Those search warrants, many of which Padilla helped to execute, were directed at homes in which large grow operations were located in basements that had been modified for that purpose, including with high-output lights, fans, watering equipment, and material used to mask the odor of marijuana. (¶¶ 5(a), 17.)

Padilla and his fellow task force officers began to suspect that a marijuana-growing network was operating a number of single-family homes used as grow houses in the Tollgate neighborhood, near the intersection of E-470 and Quincy Avenue in Aurora, Colorado. (¶ 12.)  On May 11, 2018, Padilla was surveilling the Tollgate neighborhood and observed a Chinese person arrive at the house on Whitaker Drive (which turned out to be Yang's house). (¶¶ 49, 63.)  Between May and October 2018, Padilla saw the same person come multiple times to the home on Whitaker Drive and also to another home in the same neighborhood that Padilla had already begun to suspect was a marijuana grow house. (¶ 49.)  At that other home, one of Padilla's fellow task force officers had observed the same person engaging in behavior

---

[2] All "¶" citations, without more, are to the warrant affidavit, ECF No. 50-1.

consistent with transporting finished marijuana. (¶ 22.)

Padilla eventually obtained utility records for the Whitaker Drive home spanning May 14 through September 12, 2018. (¶ 63.) The average monthly electricity usage during that time was 11,791 kWh. (*Id.*) Padilla knows from training and experience that normal residential homes use between 500 and 1,500 kWh per month and more than that "is a very good indicator that the home is being used to grow marijuana" because "there are few reasons that can account for large amounts of electrical consumption in residential homes other than the use of lights, ballasts, high volume fans, and automated control and watering systems found in marijuana grows." (¶ 5(a).) Given that the Whitaker Drive home's electricity usage was far in excess of 1,500 kWh for multiple months, Padilla concluded that the home contained a marijuana grow operation. (¶ 63.)

U.S. Magistrate Judge Scott T. Varholak approved Padilla's warrant request and the warrant was executed on October 10, 2018. (*See* ECF No. 69 at 2.) They found 1,121 live marijuana plants in the basement, two pounds of dried marijuana, and a notebook with "grow notes." (*Id.*)

**C.  Yang's Attacks on the Warrant**

Yang says,

> [T]here is a distinct lack of nexus between the property . . . and any criminal activity. In fact, the basis for the search appears to be limited to two consideration[s]: it is owned by Asians, at least one of whom is deemed suspicious by law enforcement due to his association with other people suspected of growing marijuana; and it has had a historically high electric bill.

(ECF No. 50 ¶ 5.)

Yang does not explain why this is not enough "to make a practical, common-

5

sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Nolan*, 199 F.3d at 1182. Yang says that "increased electrical usage during this period can reasonably correspond to the hotter months [Summer 2018], when air conditioning is more necessary." (ECF No. 50 ¶ 7.) But Yang's off-the-cuff assertion is speculation compared to Padilla's concrete statement (unchallenged by Yang) that 1,500 kWh is the high end of average power usage for a normal residential home. Yang's home was using 11,791 kWh, on average, per month—almost eight times the normal maximum. Something inside that house was using a highly unusual amount of electricity. Combined with seeing a person visit that house who had also been seen at other suspected grow houses was more than enough for the magistrate judge to conclude that there was a fair probability of an illegal marijuana operation inside the house.

Yang also offers the following:

> "[Defendant's] arrival at a house where others had drugs therein does not create reasonable suspicion. As we held in *People v. Carillo-Montes*, 796 P.2d 970 (Colo. 1990), '[t]he fact that a person keeps cocaine at a residence is simply insufficient to raise a reasonable suspicion that everyone who approaches that residence…[is] in some way involved in a transaction related to the cocaine." *Id.* at 974.

(*Id.* ¶ 6 (quoting *People v. Hardrick*, 60 P.3d 264, 271 (Colo. 2002) (Hobbs, J., dissenting)) (alterations in original).) Yang fails to note that this language is from a dissenting opinion. In any event, *Hardrick* is inapposite. *Hardrick* was about a man who walked into a home while a police search for narcotics was in progress. 60 P.3d at 265–66. The officers required the man to take his hands out of his pockets, and, as he did so, he discarded a bag of methamphetamine. *Id.* The trial court suppressed the evidence, holding that the officers did not have reasonable suspicion such that they

6

could require the man to remove his hands from his pockets. *Id*. at 266. The Colorado Supreme Court reversed, holding that the police had suspicion sufficient to perform a patdown search for officer safety purposes, which included the authority to require the man to remove his hands from his pockets. *Id*. at 268. The dissenting justice reasoned that the man should not have been deemed suspicious for various reasons, including that presence at a house suspected of drug activity does not make that person automatically a suspect. *Id*. at 271 (Hobbs, J., dissenting).

In short, *Hardrick* is about warrantless searches of persons within a home, not searches of homes themselves. It is certainly not about whether probable cause existed to authorize the search of a home.

For these reasons, Yang has failed to cast even minimal doubt on the warrant, and her Motion to Suppress is therefore denied.

## II.  JOINDER MOTION (ECF No. 51)

Yang's Motion for Relief from Prejudicial Joinder seeks to sever her trial from that of her co-defendant. But her co-defendant has filed a notice of disposition and a change-of-plea hearing is scheduled for November 12, 2019. (ECF Nos. 67, 75.) This motion is therefore denied as moot.

## III.  RULE 404(b)/609 MOTION (ECF No. 52)

Yang next seeks to require the Government to disclose evidence of crimes, wrongs, or other acts the Government intends to introduce, per Federal Rule of Evidence 404(b)(2). Yang also invokes Federal Rule of Evidence 609, which governs impeachment by evidence of a criminal conviction.

The Government responds that it does not intend to introduce any Rule 404(b)

evidence. (ECF No. 69 at 12–13.) The Government does not respond to the Rule 609 argument, perhaps because that rule contains no disclosure requirement, except when relying on a conviction that is more than ten years old. *See* Fed. R. Evid. 609(b)(2). A Rule 609 argument is unripe in any event because it is unclear that Yang has any prior criminal convictions, much less that she would testify at trial and therefore potentially be subject to impeachment by prior criminal conviction. Accordingly, this motion is denied as moot as to Rule 404(b) and denied without prejudice as premature as to Rule 609.

## IV. *JENCKS* MOTION (ECF No. 53)

Yang next requests that the Government be required to make early disclosure of material subject to the *Jencks* Act, 18 U.S.C. § 3500. The Government represents that the only possible such evidence in this case are the grand jury transcripts, disclosure of which is governed by Federal Rule of Criminal Procedure 6(e), and that the Government will seek the Court's permission to disclose those transcripts "if a grand jury witness will be called as a government witness at trial." (ECF No. 69 at 13.) The Court therefore denies Yang's request as moot.

## V. *JAMES* MOTION (ECF No. 54)

Yang requests that the Government disclose any statement it plans to introduce under Federal Rule of Evidence 801(d)(2)(E). The Government represents that it "does not anticipating offering [such] statements." (ECF No. 69 at 13.) The Court therefore denies Yang's request as moot.

## VI. DISCLOSURE MOTION (ECF No. 55)

Yang moves to compel the Government to disclose the existence and substance

of promises of leniency.  The Government responds that it will abide by its disclosure obligations under *Giglio v. United States*, 405 U.S. 150 (1972).  (ECF No. 69 at 14.)  The Court takes the Government at its word, and this motion is therefore denied as moot.

## VII.  CONFIDENTIAL INFORMANTS MOTION (ECF No. 56)

Yang also moves to require the Government to disclose the identity of confidential informants.  "Due to the strong public interest in furthering effective law enforcement, the government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts.  While anonymity encourages citizens to communicate their knowledge of unlawful activity, the privilege must give way to fairness when disclosure of the informer's identity 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'  The need for disclosure depends on the 'particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'"  *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62 (1957)).  To carry the burden of requiring such disclosure, a defendant "must present more than mere speculation about the possible usefulness of an informant's testimony."  *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990).

Yang admits that she does not know whether any confidential informants were used, but simply wants the Government to disclose whatever confidential informants might have contributed to the investigation.  (ECF No. 56 at 2.)  This fails the foregoing

standards, and Yang's motion is accordingly denied.

## VIII. REQUEST FOR RULE 807 NOTICE (ECF No. 57)

Finally, Yang requests an order requiring the Government to disclose any statements it tends to introduce under Federal Rule of Evidence 807, which is the so-called "residual exception" to the hearsay rules. The Government represents that it "does not intend to introduce any [such] statements," but, "[i]n the event this changes, the government will provide notice sufficiently in advance of trial to allow the defendant a fair opportunity to prepare." (ECF No. 69 at 16–17.) Accordingly, Yang's motion is denied as moot.

## IX. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Suppress Fruits of Search Warrant (ECF No. 50) is DENIED;

2. Defendant's Motion for Relief from Prejudicial Joinder (ECF No. 51) is DENIED AS MOOT;

3. Defendant's Motion for Disclosure Pursuant to Rules 404(b) and 609, Federal Rules of Evidence (ECF No. 52) is DENIED AS MOOT as to Rule 404(b) and DENIED WITHOUT PREJUDICE as premature as to Rule 609;

4. Defendant's Motion for Early Production of *Jencks* Material (ECF No. 53) is DENIED AS MOOT;

5. Defendant's Motion for Production of *Bruton* and Rule 801(d)(2)(E) Materials and Motion for Pretrial *James* Determination of Admissibility of Alleged Co-Conspirator Statements (ECF No. 54) is DENIED AS MOOT;

6. Defendant's Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment (ECF No. 55) is DENIED AS MOOT;

7. Defendant's Motion to Disclose Identity of Informants (ECF No. 56) is DENIED; and

8. Defendant's Request for Notice by Government of Intent to Introduce Evidence Pursuant to Rule 807, F.R.E. (ECF No. 57) is DENIED AS MOOT.

Dated this 8th day of October, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge